## DALLAS OPERA HOUSE ASS'N v. DALLAS ENTERPRISES, Inc. (No. 951–4758).

Commission of Appeals of Texas, Section A. Oct. 12, 1927.

**1. Landlord and tenant ⬤⟞152(5)—Lease binding lessor to "forthwith" repair damage caused by fire from "proceeds" of insurance, if it deemed proceeds sufficient, required election within reasonable time after fire.**

Lease of theater, providing that, in event of fire, lessor should cause damage to be repaired "forthwith" out of "proceeds" of certain insurance, if they be deemed sufficient for repairs, and that, if lessor elected not to repair, lessee might do so and receive proceeds of insurance and that rent should be paid until lease should be terminated, regardless of fire, *held* to require lessor to elect within reasonable time whether it would repair, and, if electing to do so, to take chance of recoupment for expenditures from insurance.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Forthwith.]

**2. Landlord and tenant ⬤⟞233(2)—Whether lessor failed to elect within reasonable time whether it would repair damage from fire held for jury.**

Whether lessor of theater burned by fire failed to elect within reasonable time whether it would repair damage by fire *held* question for jury.

Error to Court of Civil Appeals of Third Supreme Judicial District.

Action by the Dallas' Enterprises, Inc., against the Dallas Opera House Association and another, in which the named defendant filed a cross-action. Judgment for plaintiff was affirmed by the Court of Civil Appeals (288 S. W. 656), and the named defendant brings error. Affirmed.

Locke, Locke, Stroud & Randolph, of Dallas, for plaintiff in error.

Phillips, Townsend & Phillips and Tom Scurry, all of Dallas, for defendant in error.

Cockrell, McBride & O'Donnell, of Dallas, for Dallas Trust & Savings Bank.

NICKELS, J. The suit involves title and right to possession, etc., of certain bonds (and interest) deposited by defendant in error to secure performance of its obligations under a lease contract with plaintiff in error. Each party claimed a breach of the contract by the other. Defendant in error renounced the contract because of breach February 1, 1922, and plaintiff in error declared it ended by breach March 7, 1922. A judgment in favor of defendant in error ("lessee") was affirmed by the honorable Court of Civil Appeals, Third District. 288 S. W. 656. Writ of error was allowed upon plaintiff in error's claim of right to judgment as a matter of law. In avoidance of repetition, we refer to the opinion of the Court of Civil Appeals for complete statement of the case.

Paragraph 8 of the "lease" contains a stipulation that the "lease" should "terminate" if the duties previously named therein were not performed and that the "rent" should abate; its language is:

"Otherwise, this lease shall terminate. The rent shall not abate in whole or in part in case of fire until the lease is terminated as aforesaid."

The bonds, then, belong to the one party or the other, accordingly as the default may be placed. The trial court, with the aid of a jury, put it on the lessor, and the case now made is whether, as a matter of law, that party was innocent.

[1] The claim is that lessor was not bound to repair, or to commence repairing, or to give notice of insufficiency of the "proceeds," before the 1st day of February, 1922, and it rests upon the argument that "proceeds of the insurance" signifies money actually received under the policies, and hence that lessor might not pass judgment upon the "sufficiency" thereof, or cause repairs to be made "out of" such "proceeds," until settlements were made with the insurance companies. "Proceeds," as used by parties in contracting, does not always relate to actual money in hand, and, if in the present instance it be given that hard and fast definition, its use would introduce an ambiguity, if not stipulation for an impossibility, into the agreement; for in case of fire and notice thereof by lessee, it is said (in paragraph 8) the lessor "shall cause the damage to be repaired forthwith" "out of the proceeds of the insurance," if they be deemed "sufficient for such repair." Literally the damage is to be repaired "forthwith," if at all, and the determination of "sufficiency," of course, is precedent to commencing "repairs." The lessor has an alternative: If it judges the "proceeds" to be "insufficient for such repair," it shall so notify the lessee; but this right or duty is characterized by "forthwithness," for, as shown, judgment upon "sufficiency" must be passed before disposition of the alternative of repairing "forthwith." We do not, therefore, regard the letter, which kills, but the spirit, which makes alive, in so far as bodied forth in context and situation of the parties. It is our view that, as against the respective parties, "forthwith" and "proceeds" have some modifications.

What has been said makes it plain, we think, that of this the lessor has no just complaint; and, in view of the forfeiture quality of its rights, there will appear even narrower ground of complaint, when it is remembered that, if the word "proceeds" was used with the sense claimed, the lessee stipulated for a possibility of endurance of penalty or payment of rent for the major part of the term.

⬤⟞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

In fact, a substantial portion of the insurance money was not received until September 18, 1922; so that lessor's argument, in its full scope, would require payment of rent at the rate of $2,500 per month for 10 months plus the time subsequently used in repairing, during all of which time lessee would be deprived of use of the building. It is our view that "forthwith" was used in the sense of a "reasonable time" for actual repair, and that, consequently, lessor owed the duty of determining within a reasonable time whether it would repair and take the chance of paying its bills, or of recoupment, with insurance money. "Proceeds," we think, was employed in that sense. The latter assumption may be partially tested in this way: Suppose the "proceeds," before or after actual receipt, had been deemed "sufficient," and, repairs having been made, had been found in fact insufficient?

The fact that lessee incurred rental charges, etc., and that those burdens were of total loss so long as lessor performed its duty, imports dispatch in judgment of "sufficiency" of "proceeds," and thus throws some light upon what would be a "reasonable time." And there is additional help in that part of the paragraph wherein the lessee, on condition, is given the privilege of repairing: If the lessor deem the "proceeds" "insufficient" and notify the lessee, it may repair, it is said, "for the proceeds," provided it furnish indemnity bond, etc., "within five days thereafter, and not afterwards."

It is noticeable that "the insurance" dealt with in paragraph 8 is such insurance as was "provided or paid for as aforesaid by lessee." Paragraph 5 includes the "aforesaid" stipulation for provision or payment of insurance "by lessee" in these terms:

"As further rent for the premises hereby leased, the lessee shall insure and keep insured the property of the lessor, hereby leased, in the blanket aggregate amount of $50,000 in companies acceptable to the lessor, and shall procure, pay for, and deliver to the lessor such policies of insurance. Such insurance shall be against the hazard of fire. If the lessee shall be unable to procure all or some part of the stipulated amount of $50,000 of insurance, he shall notify the lessor in writing of such fact and at 12 o'clock noon of the 10th day after such notice shall be relieved from his obligation aforesaid, but if the lessor shall procure such insurance the lessee immediately upon demand shall pay to the lessor the amount of the premiums thereon. If, at the commencement of the term of this lease, the lessor has in its possession policies of fire insurance for all or any part of said sum of $50,000, in companies acceptable to the lessor, the lessee shall, at the commencement of the term, pay to the lessor such portion of the premiums on said policies as is applicable to the unexpired periods of said policies. Similarly, on June 1, 1926, the lessor will pay to the lessee such portion of premiums on fire insurance policies then held by the lessor and furnished by the lessee as is applicable to the unexpired periods of said policies."

Insurance in the aggregate of $50,000, therefore, is "the insurance" to whose "proceeds" paragraph 8 has reference. Sequently, the duty of lessor had a like relation. It was bound to decide the probability, vel non, of those "proceeds" as sufficient to offset the cost of repairing. But it did not even consider that question prior to the time it claimed forfeiture of the bonds and interest, if ever; contrarily, it considered only the advisability of repairing out of the proceeds of $77,500 of insurance actually outstanding, and for aught that is shown it did not reach a decision on that question before claiming the penalty, although as early as January 24, 1922, it had estimates representing what it thought to be the "best judgment" to be had upon the subject, and showing a probable cost of $84,543.96.

Relevant evidence (sufficiently stated in the opinion of the Court of Civil Appeals) makes it inferable, if not plain, that there was no intention of repairing the damage unless the proceeds of the total insurance proved to be sufficient, or substantially sufficient, for the purpose, and that the question of sufficiency was pretermitted until ascertainment of how much money would be received, or probably received, under the policies for $77,500. The parties stipulated about "forthwith" decision of one question by lessor; lessor, up to February 1, 1922, only contemplated decision of a different question, relating to a thing in which lessee was not interested, and did not begin to consider, much less decide, the important matter to which its duty was referable. In respect to the nullity of decision or consideration of one question in supposed performance of a contract relating to another question, vide G., H. & S. A. Ry. Co. v. Henry & Dilley, 65 Tex. 685, 691, 692, Kansas City, etc., Ry. Co. v. Perkins, 88 Tex. 66, 77, 78, 29 S. W. 1048 and Blum Milling Co. v. Moore-Seaver Grain Co. (Tex. Com. App.) 277 S. W. 78.

[2] Lessee, thus circumstanced, claimed and acted upon default that day, and it cannot be held, as a matter of law, that it exceeded its rights.

Accordingly we recommend affirmance of the judgment of the Court of Civil Appeals.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals both affirmed, as recommended by the Commission of Appeals.