**Robert A. MANN, Appellant,**

v.

**NCNB TEXAS NATIONAL BANK, Appellee.**

**No. 05–92–00428–CV.**

Court of Appeals of Texas, Dallas.

Dec. 8, 1992.

Rehearing Denied Feb. 4, 1993.

Fred M. Johnson, Jr., Dallas, for appellant.

John B. Kyle, Jonathan L. Snare, Dallas, for appellee.

Before LAGARDE, OVARD and MALONEY, JJ.

## OPINION

MALONEY, Justice.

NCNB Texas National Bank (NCNB)[1] sued Robert A. Mann as guarantor of a Rodeo Drive Partners' (the partnership) loan to collect on the loan and for attorney's fees. In two points of error, Mann complains that the trial court erred in granting: (1) NCNB's motion for summary judgment, and (2) NCNB's motion for judgment on appellant's counterclaim. We affirm the judgment of the trial court.

### STATEMENT OF FACTS

The partnership borrowed money from NCNB's predecessor. The partnership executed and delivered a note, secured by a deed of trust, to NCNB's predecessor. Mann, with four others, guaranteed the loan. NCNB and the partnership extended the note several times. With each extension, NCNB increased the interest rate charged. After the end of the term specified in the last written extension, the parties again discussed extending the note. Mann requested that NCNB reduce the interest rate charged to the prime rate. The parties never executed a written document extending the loan.

The partnership never paid the loan. NCNB made demand on the partnership for payment. NCNB posted the property for foreclosure. When the partnership filed for Chapter 11 bankruptcy, NCNB demanded payment from all of the guarantors. NCNB sued to collect on the note and for attorney's fees. The guarantors cross-claimed against each other. Mann counterclaimed, alleging breach of contract.

NCNB moved for summary judgment against all guarantors. The trial court granted NCNB summary judgment on the guarantors' liability. The trial court scheduled the cross-claims, counterclaims, and attorney's fees for trial. At time of trial, only Mann's counterclaim against NCNB

remained. The trial court entered a directed verdict for NCNB.

### SUMMARY JUDGMENT

In his first point of error, Mann asserts that the trial court erroneously granted NCNB's motion for summary judgment. Mann argues that NCNB and the partnership's prior renewal agreements increased the interest rate without his consent. He contends this changed his obligation and discharged his liability.

NCNB argues Mann signed a continuing guaranty agreement. By this agreement, Mann prospectively guaranteed the loan and consented to any changes in the loan agreement between the partnership and NCNB.

#### 1. Applicable Law

Texas law provides a method of summarily ending a case that involves only questions of law and no genuine fact issues. *See* TEX.R.CIV.P. 166a(c). The summary judgment rule eliminates patently unmeritorious claims or untenable defenses. TEX.R.CIV.P. 166a(c). It is not intended to deprive the litigants of their rights to a full hearing on the merits of any real issue of fact. *Gulbenkian v. Penn*, 151 Tex. 412, 252 S.W.2d 929, 931 (1952); *Gaines v. Hamman*, 163 Tex. 618, 358 S.W.2d 557, 563 (1962).

#### 2. Standard of Review

■ The Texas Supreme Court mandates the standards we apply in reviewing a trial court's granting summary judgment. They are:

1. The movant has the burden of showing that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law.

2. In deciding whether a disputed material fact issue exists, we accept as true evidence favorable to the nonmovant.

---

**1.** NCNB assigned and transferred all its right, title, and interest in the original note, guaranties on the original note, and all claims asserted and judgments rendered in this lawsuit to the FDIC.

This Court substituted the FDIC as appellee. However, for purposes of this opinion, we refer to appellee as NCNB.

3. We indulge in every reasonable inference and resolve any doubts in nonmovant's favor.

See *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). Summary judgment is proper when the controversy involves an unambiguous document. *See Moody v. Moody Nat'l Bank*, 522 S.W.2d 710, 715 (Tex.Civ.App.—Houston [14th Dist.] 1975, writ ref'd n.r.e.).

### 3. Continuing Guaranty

■ To be relieved of liability on his guaranty, appellant must show that a material alteration of the underlying loan was made without his consent, and that the alteration was to his detriment. *Federal Deposit Ins. Corp. v. Attayi*, 745 S.W.2d 939, 944 (Tex.App.—Houston [1st Dist.] 1988, no writ). "A change in the rate of interest by the renewal note does not discharge a guarantor on a continuing guaranty." *Dicker v. Lomas & Nettleton Fin. Corp.*, 576 S.W.2d 672, 676 (Tex.Civ.App.—Texarkana 1978, writ ref'd n.r.e.). A continuing guaranty is:

> not limited to a single transaction, ... which contemplates future course of dealing, covering a series of transactions, generally for an indefinite time or until revoked. It is prospective in its operation and is generally intended to provide security with respect to future transactions, within certain limits, and contemplates a succession of liabilities, for which, as they accrue, the guarantor becomes liable.

*Blount v. Westinghouse Credit Corp.*, 432 S.W.2d 549, 553 (Tex.App.—Dallas 1968, no writ).

### 4. Application of Law to the Facts

■ Mann guaranteed payment of the partnership's debt. The guarantors signed an agreement with the words "Continuing Guaranty" included in the title. The agreement's language specifically provided that "[t]his is a continuing guaranty." Mann expressly guaranteed "all debt or other liability of every kind for which Debtor now is or hereafter shall be obligated ... plus interest as provided in any agreement between Lender an[d] Debtor."

The guaranty's terms are uncontroverted and unambiguous. Any alterations of the underlying loan were made in accordance with the terms of the continuing guaranty. Mann consented to all future liabilities plus changes in interest rates. No material questions of fact remained. The trial court did not err in granting summary judgment.

We overrule appellant's point of error number one.

### MOTION FOR JUDGMENT

In point of error number two, Mann maintains the trial court erred in granting NCNB's motion for judgment[2] on his breach of contract counterclaim. He contends that the statute of frauds should not defeat his counterclaim as a matter of law. He argues that the parties orally agreed to extend the note and that NCNB would draft the extension paperwork. Mann argues that, because the parties clearly contemplated completion of the extension paperwork within one year, the statute of frauds does not apply. He also argues that, since the parties *could* have paid off the new note within one year, he could enforce the new note *even if it was not in writing.*

Mann contends that NCNB promised to sign or deliver an extension agreement and did not do so. NCNB argues that Mann attempts to assert promissory estoppel to avoid the statute of frauds. NCNB contends that Mann's pleadings did not raise promissory estoppel nor was promissory estoppel tried by consent. NCNB argues that Mann cannot raise promissory estoppel for the first time on appeal.

2. Appellee orally moved for, and the trial court granted, a directed verdict. Because this was a trial before the court, appellee should have moved for judgment and the trial court should have granted judgment. *See Qantel Business Sys., Inc. v. Custom Controls Co.*, 761 S.W.2d 302, 303–04 (Tex.1988). We review the granting of a motion for directed verdict and motion for judgment by the same appellate standard. *Id.* For purposes of this opinion, we will refer to appellee's "motion for directed verdict" and the trial court's "directed verdict" as appellant does throughout his appellate brief—a motion for judgment.

### 1. Standard of Review

■ We review the granting of a directed verdict or a motion for judgment in the light most favorable to the party against whom the trial court rendered judgment. We disregard all contrary evidence and inferences. *Qantel Business Sys., Inc. v. Custom Controls Co.*, 761 S.W.2d 302, 303 (Tex.1988). In a trial before the court, the trial judge, sitting as trier of fact and law, may rule on both factual and legal issues at the close of plaintiff's case. *Id.* at 305.

### 2. Applicable Law

■ A contract not performable within one year must be in writing. TEX.BUS. & COM.CODE ANN. § 26.01(b)(6) (Vernon 1987). The writing itself is not the contract. It is only evidence of the parties' agreement to perform an act. *Foley & Whitehill v. Texas Co.*, 252 S.W. 566, 568 (Tex.Civ.App.—Texarkana 1923, writ dism'd). It is the act which must be performable within one year, not the contract. *Id.*

■ When an agreement by its terms cannot be completed within one year, it must be in writing to be enforceable. *Niday v. Niday*, 643 S.W.2d 919, 920 (Tex. 1982). "The possibility of performance within one year must ... have been within the contemplation of the parties" to satisfy the statute. *First Nat'l Bank v. Trinity Patrick Lodge No. 7*, 238 S.W.2d 576, 579 (Tex.Civ.App.—Fort Worth 1951, writ ref'd n.r.e.), *citing Johnson v. Wallace*, 191 S.W.2d 487, 489 (Tex.Civ.App.—Austin 1945, no writ). The possibility may not be so remote and unforeseen that it was entirely beyond the contemplation of the parties. *First Nat'l Bank*, 238 S.W.2d at 579.

■ An agreement that fixes a definite period longer than a year during which performance shall continue indicates that the parties did not contemplate earlier performance. *See Vess Beverages, Inc. v. Paddington Corp.*, 886 F.2d 208, 212–13 (8th Cir.1989). The possibility of prepayment within one year alone is not enough to satisfy the statute. *See id.; First Nat'l Bank*, 238 S.W.2d at 579.

■ Promissory estoppel is an exception to the statute of frauds. *See Beta Drilling, Inc. v. Durkee*, 821 S.W.2d 739, 741–42 (Tex.App.—Houston [14th Dist.] 1992, writ denied); *Consolidated Petroleum Indus., Inc. v. Jacobs*, 648 S.W.2d 363, 367 (Tex. App.—Eastland 1983, writ ref'd n.r.e.). Appellant must plead and prove the affirmative defense of promissory estoppel. TEX.R.CIV.P. 94; *Celotex Corp. v. Tate*, 797 S.W.2d 197, 207 (Tex.App.—Corpus Christi 1990, no writ). The party invoking the promissory estoppel exception must show that the opposing party orally "promise[d] to sign a written contract which had been prepared and which would satisfy the requirements of the statute of frauds." *Beta*, 821 S.W.2d at 741.

### 3. Application of Law to the Facts

■ Mann relies on a general rule of law contained in *Keystone International, Inc. v. Ingham*, 593 S.W.2d 354 (Tex.Civ. App.—Texarkana 1980, no writ). The *Keystone* court held that for a contract "to fall within the statute of frauds and be unenforceable ... [it] 'must be one of which it can truly be said at the very moment it is made, [t]his agreement is not to be performed within one year'." *Id.* at 357, citing 2 CORBIN ON CONTRACTS § 444 at 535 (1950). The *Keystone* court opined "there must not be the slightest possibility that it can be fully performed within one year.... It makes no difference how long the parties expect performance to take or how reasonable and accurate those expectations are, if the agreed performance can be completed within a year." *Id.* The contract in *Keystone* provided for performance of acts. It did not provide a fixed time for completion of performance. *Id.*

Mann also cites *Miller v. Riata Cadillac Co.*, 517 S.W.2d 773 (Tex.1974), as support for his contention that the statute of frauds does not apply. The *Miller* court held that when no period of performance is stated, the statute does not apply. *Id.* at 775. Neither the *Keystone* nor the *Riata Cadillac* contract fixed a specific completion date. Both courts looked at the evidence to determine whether the parties

could have completed the contracts within one year.

Mann testified that the agreement extended the time of performance under this contract for three years. The parties clearly contemplated performance would exceed one year.

Mann did not plead or offer evidence that the parties promised to sign an existing written document. He testified that NCNB's agent agreed to have its attorneys prepare extension papers. The record does not show that NCNB's attorneys ever prepared the extension papers.

The statute of frauds controls. For Mann to enforce the extension contract, it had to be in writing. Reviewing the evidence in the light most favorable to Mann, the trial court did not err when it denied Mann's counterclaim for breach of contract. We overrule appellant's point of error number two.

We affirm the trial court's judgment.