Walker v. Tafralian

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-01-315-CV

GARY EARL WALKER APPELLANT AND

APPELLEE

V.

DICRON TAFRALIAN APPELLEE AND

APPELLANT

------------

FROM THE 48
TH
 DISTRICT COURT OF TARRANT COUNTY

------------

OPINION

------------

Introduction

In this breach of contract case, Gary Earl Walker appeals from a judgment on the jury’s verdict for Dicron Tafralian.  Tafralian also cross appeals, complaining that the trial court improperly omitted prejudgment interest from the judgment.  Because we conclude that Tafralian cannot recover on his breach of contract claims against Walker, we will reverse and render.

Background Facts & Procedural History

Walker owns and operates a commercial real estate company.  Sometime before January 1999, Walker had entered into purchase contracts on three separate properties:  the “East Street” property, the “White Settlement Property,” and the “Stemmons” property.  In January 1999, Walker asked Tafralian, who was also in the commercial real estate business, if Tafralian would loan Walker the money needed to purchase the East Street property.

Tafralian testified at trial that the original financing proposal was for Tafralian to loan Walker 80% of the $120,000 purchase price.  Tafralian testified that he agreed to finance this amount.  Shortly thereafter, however, the parties discussed a new proposal (the Proposal), which was handwritten by Walker on a single sheet of paper.  

Under the Proposal, Tafralian would finance 100% of the “hard costs” associated with the East Street property, up to $150,000, and would also provide consulting and project management assistance on any work required.  In return, Tafralian would receive 1% interest per month, 25% of the profits from the East Street property, and equal partnership in either the White Settlement or Stemmons project.  The proposal further provided that Walker would be responsible for marketing and leasing the East Street property, without receiving a fee, and would assume all losses and risks associated with the venture.  Tafralian accepted Walker’s proposal and chose partnership in the Stemmons project.  

The closings on the East Street and Stemmons properties were scheduled for April 30, 1999.  On April 27, however, Walker agreed to extend the closing date on the Stemmons property to June 1, 1999.
(footnote: 1)  When Tafralian learned that the East Street and Stemmons closings would not occur simultaneously, he refused to finance Walker’s purchase of the East Street property or to proceed with the East Street closing.  Consequently, Walker paid cash for the East Street property and tendered to Tafralian a refund of the earnest money he had paid on the Stemmons property.  Tafralian refused Walker’s tender, although he recouped it a year later from another of the parties’ real estate investments.  Ultimately, Tafralian never loaned Walker any money for the East Street property, nor did he participate in the Stemmons project.  

Thereafter, Tafralian sued Walker for breach of contract.  The jury returned a verdict for Tafralian, and the trial court rendered judgment on the verdict.  Walker moved for a judgment notwithstanding the verdict (JNOV) based on the statute of frauds, failure of consideration, and other theories.  He also moved to modify the judgment to exclude prejudgment interest.  The trial court denied the motion for JNOV, but granted Walker’s motion to modify and deleted the award of prejudgment interest from the judgment.  This appeal followed.  

Statute of Frauds

In his second issue, Walker contends that the trial court improperly denied his motion for JNOV because Tafralian’s breach of contract claims are barred by the statute of frauds.  
Walker contends that the parties’ agreement falls within the statute of frauds because the agreement was not to be performed in one year, but two.  The parties did not specify a time for performance for all elements of their agreement.

The statute of frauds provides that “an agreement which is not to be performed within one year from the date of making the agreement” is not enforceable unless it is in writing and signed by the person to be charged with the agreement.  
Tex. Bus. & Com. Code Ann. 
§ 26.01(a), (b)(6) (Vernon 2002).

Whether a contract falls within the statute of frauds is a question of law.  
Bratcher v. Dozier,
 162 Tex. 319, 346 S.W.2d 795, 796 (1961); 
Key v. Pierce,
 8 S.W.3d 704, 708 (Tex. App.—Fort Worth 1999, pet. denied).  If an agreement falls within the statute, there must be a written memorandum that contains the essential terms of the contract, expressed with such certainty that they may be understood without resorting to oral testimony.  
Cohen v. McCutchin,
 565 S.W.2d 230, 232 (Tex. 1978); 
Key,
 8 S.W.3d at 708.  Otherwise, the agreement is not enforceable.  
Tex. Bus. & Com. Code Ann. 
§ 26.01(a); 
Cohen,
 565 S.W.2d at 232-33.

Where the time for performance of a contract is uncertain and performance can conceivably occur within one year, the statute of frauds does not apply.  
Miller v. Riata Cadillac Co.,
 517 S.W.2d 773, 775 (Tex. 1974); 
Gerstacker v. Blum Consulting Eng’rs, Inc.,
 884 S.W.2d 845, 849 (Tex. App.—Dallas 1994, writ denied); 
Leon Ltd. v. Albuquerque Commons P’ship,
 862 S.W.2d 693, 701 (Tex. App.—El Paso 1993, no writ).  If performance within a year is a possibility that is consistent with the provisions of the agreement, the fact that performance within one year is not required or expected does not bring the contract within the statute of frauds.  
Republic Bankers Life Ins. Co. v. Wood,
 792 S.W.2d 768, 776 (Tex. App.—Fort Worth 1990, writ denied).  To satisfy the statute, however, the possibility of performance within one year must have been contemplated by the parties.  
Mann v. NCNB Tex. Nat’l Bank,
 854 S.W.2d 664, 668 (Tex. App.—Dallas 1992, no writ); 
First Nat’l Bank v. Trinity Patrick Lodge No. 7,
 238 S.W.2d 576, 579 (Tex. Civ. App.—Fort Worth 1951, writ ref’d n.r.e.).

In this case, Tafralian’s loan to Walker for the East Street project, which would have occurred at the closing on that property, and the partnership in the Stemmons project could have been performed within one year.  
See Boutell v. Hill,
 498 S.W.2d 713, 714 (Tex. Civ. App.—El Paso 1973, no writ); 
Heathington v. Heathington Lumber Co.,
 398 S.W.2d 822, 826 (Tex. Civ. App.—Amarillo 1966, no writ); 
Howell v. Bowden,
 368 S.W.2d 842, 846 (Tex. Civ. App.—Dallas 1963, writ ref’d n.r.e.) (all providing that oral contract to perform partnership for indefinite period was performable within one year).  The parties also contemplated that other portions of their agreement could be performed in one year.  For example, they attempted to negotiate a contract for calculating the division of profits from the East Street property (the Profits Contract).  Although the Profits Contract would have given Walker two years to sell the East Street property, he could have sold the property within one year.  In that event, the division of profits would have been performable within one year.  Likewise, the term of the note to finance the improvements on the East Street property was two years, “or upon sale of any or all” of the East Street property, whichever occurred first.  Thus, Walker could have performed the note for improvements by repaying it within one year if he had sold the East Street property within a year.

Part of the parties’ agreement was not to be performed within one year, however.  Tafralian testified that the term of the loan for the purchase of the East Street property was to be for two years, and the purchase money real estate lien note that the parties attempted to negotiate was for a two-year term.  

An agreement that fixes a definite period longer than a year during which performance shall continue indicates that the parties did not contemplate earlier performance.  
Mann,
 854 S.W.2d at 668; 
Vess Beverages, Inc. v. Paddington Corp.,
 886 F.2d 208, 213 (8
th
 Cir. 1989).  The possibility of prepayment within one year alone is not enough to satisfy the statute.  
Mann,
 854 S.W.2d at 668; 
First Nat’l Bank,
 238 S.W.2d at 579.  Because the loan from Tafralian to Walker for purchase of the East Street property was to be performed over a two-year period, this portion of the parties’ agreement is within the statute of frauds.

Tafralian contends, however, that even if the parties’ agreement regarding the East Street project is within the statute of frauds, the portion of the agreement concerning partnership in the Stemmons project is not, because each investment “stood on its own” as to terms and consideration.  We disagree.

If contractual provisions within the statute of frauds are not severable from those outside the statute, the entire contract is unenforceable unless it satisfies the statute of frauds.  
Upson v. Fitzgerald,
 129 Tex. 211, 103 S.W.2d 147, 150 (1937).  Contractual provisions that are dependent upon one another are not severable for purposes of the statute of frauds.  
Id.
  Here, the portion of the contract providing for the East Street property loan is a key element of the contract that is not severable from the remainder of the parties’ agreement.  Walker needed financing to go forward with the East Street project, without which there would have been no profits or repayment of interest.  Walker offered Tafralian an equal partnership in the Stemmons project as an incentive to obtain financing for the East Street project.  In addition, Tafralian testified at trial that the East Street and Stemmons projects were a package deal.  

We hold that the provisions of the agreement relating to the East Street project are not severable from the provisions relating to the Stemmons project.  Because the East Street provisions are within the statute of frauds, the agreement was not enforceable against Walker unless all of its essential terms were in writing and signed by him.  
See id.

Tafralian asserts that all material terms of the parties’ agreement were in writing and signed by Walker.  He contends that the written agreement consisted of Walker’s initial hand-written proposal to Tafralian, plus “less important agreements” later faxed by Walker or his attorneys to Tafralian.  Walker asserts that he never signed any writing, with or without the essential terms of the parties’ agreement.  

We need not decide whether there was a writing signed by Walker because one provision that Tafralian contends “was always a material part” of his and Walker’s agreement is not in any of the documents on which Tafralian relies.  Tafralian asserts that the provision requiring simultaneous closings on both the East Street and Stemmons properties was a material part of the parties’ agreement because he did not want to close on the East Street property, which he considered to be the riskier of the two investments, unless he knew the Stemmons closing would also take place.  The only possible written mention of a simultaneous closing was Tafralian’s proposal in a May 3, 1999 letter that the parties “[t]ie the two deals together.”  Tafralian did not write this letter until after he refused to make the East Street loan because Walker had extended the closing date on the Stemmons property, and there is no evidence that Walker accepted Tafralian’s proposal.  Thus, even if we assume for the sake of argument that the parties had a written agreement, the simultaneous closing provision was not in it.  

Tafralian testified at trial that the parties “had always agreed . . . we’re going to close on the same day.”  At best, however, this testimony is merely evidence of an oral modification of the parties’ agreement.  An oral modification of a written contract within the statute of frauds is enforceable only if the modification does not materially alter the obligations imposed by the underlying agreement.  
See Dracopoulas v. Rachal,
 411 S.W.2d 719, 722 (Tex. 1967); 
Vendig v. Traylor,
 604 S.W.2d 424, 427 (Tex. Civ. App.—Dallas 1980, writ ref’d n.r.e.).

In this case, the simultaneous closing provision materially altered the parties’ obligations.  Tafralian testified, and asserts on appeal, that because the closings did not occur simultaneously, he was excused from loaning Walker the money for the East Street property and entitled to recover breach of contract damages against him.  When the party relying on an alleged oral modification to a contract under the statute of frauds asserts that breach of the modification is sufficiently material to excuse the nonbreaching party’s performance of the contract, the modification is material and unenforceable unless it is in writing.  
King v. Texacally Joint Venture,
 690 S.W.2d 618, 620 (Tex. App.—Austin 1985, writ ref’d n.r.e.).

Because the simultaneous closing requirement was a material term, the nonperformance of which Tafralian contends excused his performance under the contract and entitled him to damages, the requirement was not enforceable unless it was in writing.  
See id.
  The simultaneous closing requirement was not in any of the writings that Tafralian contends were signed by Walker.  Accordingly, the simultaneous closing requirement was not enforceable, and Tafralian could not recover from Walker based upon Walker’s alleged breach of the requirement.

Tafralian contends that, even if he is not entitled to recover from Walker with regard to the East Street property, there is no reason not to enforce the provision in the parties’ agreement regarding the Stemmons partnership.  Apart from his contention that Walker breached the parties’ agreement by not closing on both properties simultaneously, Tafralian does not explain why Walker was obligated to go forward with the partnership in the Stemmons project or why Tafralian is entitled to recover damages from Walker.  In light of our holdings that the simultaneous closings requirement is unenforceable and that the 
provisions in the parties’ agreement concerning the East Street and Stemmons projects were dependent upon one another, this argument fails.

Conclusion

We sustain Walker’s second issue and hold that the trial court erred by denying Walker’s motion for JNOV based on the statute of frauds.
(footnote: 2)  
See Fort Bend County Drainage Dist. v. Sbrusch,
 818 S.W.2d 392, 394 (Tex. 1991); 
Boswell v. Farm & Home Sav. Ass’n,
 894 S.W.2d 761, 768 (Tex. App.—Fort Worth 1994, writ denied) (holding that JNOV is proper if directed verdict would have been proper, such as where evidence conclusively establishes right of movant to judgment).  We reverse the trial court’s judgment for Tafralian and render judgment that Tafralian take nothing on his claims against Walker.

JOHN CAYCE

CHIEF JUSTICE

PANEL A: CAYCE, C.J.; DAY and WALKER, JJ.

DELIVERED:  March 27, 2003

FOOTNOTES
1:
Tafralian does not cite any record support for his allegations that Walker had “known for weeks of his intention to not close” on the Stemmons property, but had withheld this information from Tafralian.  
See
 
Tex. R. App. P.
 38.1(f); 
Hall v. Stephenson,
 919 S.W.2d 454, 467 (Tex. App.—Fort Worth 1996, writ denied) (both providing that factual statements must be supported by record references).

2:
In light of our holdings with regard to Walker’s second issue, we need not consider his remaining issues or Tafralian’s cross-point in which he complains that the trial court improperly excluded prejudgment interest from the judgment.  
See
 
Tex. R. App. P.
 47.1 (providing that appellate court shall address only issues necessary to final disposition of appeal).