COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
NO. 2-01-315-CV
 
GARY EARL WALKER           
           
           
           
           
   APPELLANT AND
          
           
           
           
           
           
           
           
    APPELLEE
V.
DICRON TAFRALIAN           
           
           
           
           
       APPELLEE
AND
          
           
           
           
           
           
           
           
    APPELLANT
------------
FROM THE 48
TH DISTRICT COURT OF TARRANT
COUNTY
------------
OPINION
------------
Introduction
In this breach of contract case, Gary Earl
Walker appeals from a judgment on the jury's verdict for Dicron Tafralian.
Tafralian also cross appeals, complaining that the trial court improperly
omitted prejudgment interest from the judgment. Because we conclude that
Tafralian cannot recover on his breach of contract claims against Walker, we
will reverse and render.
Background Facts &
Procedural History
Walker owns and operates a commercial real
estate company. Sometime before January 1999, Walker had entered into purchase
contracts on three separate properties: the "East Street" property,
the "White Settlement Property," and the "Stemmons"
property. In January 1999, Walker asked Tafralian, who was also in the
commercial real estate business, if Tafralian would loan Walker the money needed
to purchase the East Street property.
Tafralian testified at trial that the
original financing proposal was for Tafralian to loan Walker 80% of the $120,000
purchase price. Tafralian testified that he agreed to finance this amount.
Shortly thereafter, however, the parties discussed a new proposal (the
Proposal), which was handwritten by Walker on a single sheet of paper.
Under the Proposal, Tafralian would
finance 100% of the "hard costs" associated with the East Street
property, up to $150,000, and would also provide consulting and project
management assistance on any work required. In return, Tafralian would receive
1% interest per month, 25% of the profits from the East Street property, and
equal partnership in either the White Settlement or Stemmons project. The
proposal further provided that Walker would be responsible for marketing and
leasing the East Street property, without receiving a fee, and would assume all
losses and risks associated with the venture. Tafralian accepted Walker's
proposal and chose partnership in the Stemmons project.
The closings on the East Street and
Stemmons properties were scheduled for April 30, 1999. On April 27, however,
Walker agreed to extend the closing date on the Stemmons property to June 1,
1999.(1) When Tafralian learned that the East
Street and Stemmons closings would not occur simultaneously, he refused to
finance Walker's purchase of the East Street property or to proceed with the
East Street closing. Consequently, Walker paid cash for the East Street property
and tendered to Tafralian a refund of the earnest money he had paid on the
Stemmons property. Tafralian refused Walker's tender, although he recouped it a
year later from another of the parties' real estate investments. Ultimately,
Tafralian never loaned Walker any money for the East Street property, nor did he
participate in the Stemmons project.
Thereafter, Tafralian sued Walker for
breach of contract. The jury returned a verdict for Tafralian, and the trial
court rendered judgment on the verdict. Walker moved for a judgment
notwithstanding the verdict (JNOV) based on the statute of frauds, failure of
consideration, and other theories. He also moved to modify the judgment to
exclude prejudgment interest. The trial court denied the motion for JNOV, but
granted Walker's motion to modify and deleted the award of prejudgment interest
from the judgment. This appeal followed.
Statute of Frauds
In his second issue, Walker contends that
the trial court improperly denied his motion for JNOV because Tafralian's breach
of contract claims are barred by the statute of frauds. Walker contends that the
parties' agreement falls within the statute of frauds because the agreement was
not to be performed in one year, but two. The parties did not specify a time for
performance for all elements of their agreement.
The statute of frauds provides that
"an agreement which is not to be performed within one year from the date of
making the agreement" is not enforceable unless it is in writing and signed
by the person to be charged with the agreement. Tex. Bus. & Com. Code Ann.
§ 26.01(a), (b)(6) (Vernon 2002). Whether a contract falls within the statute
of frauds is a question of law. Bratcher v. Dozier, 162 Tex. 319, 346
S.W.2d 795, 796 (1961); Key v. Pierce, 8 S.W.3d 704, 708 (Tex.
App.--Fort Worth 1999, pet. denied). If an agreement falls within the statute,
there must be a written memorandum that contains the essential terms of the
contract, expressed with such certainty that they may be understood without
resorting to oral testimony. Cohen v. McCutchin, 565 S.W.2d 230, 232
(Tex. 1978); Key, 8 S.W.3d at 708. Otherwise, the agreement is not
enforceable. Tex. Bus. & Com. Code Ann. § 26.01(a); Cohen, 565
S.W.2d at 232-33.
Where the time for performance of a
contract is uncertain and performance can conceivably occur within one year, the
statute of frauds does not apply. Miller v. Riata Cadillac Co., 517
S.W.2d 773, 775 (Tex. 1974); Gerstacker v. Blum Consulting Eng'rs, Inc.,
884 S.W.2d 845, 849 (Tex. App.--Dallas 1994, writ denied); Leon Ltd. v.
Albuquerque Commons P'ship, 862 S.W.2d 693, 701 (Tex. App.--El Paso 1993,
no writ). If performance within a year is a possibility that is consistent with
the provisions of the agreement, the fact that performance within one year is
not required or expected does not bring the contract within the statute of
frauds. Republic Bankers Life Ins. Co. v. Wood, 792 S.W.2d 768, 776
(Tex. App.--Fort Worth 1990, writ denied). To satisfy the statute, however, the
possibility of performance within one year must have been contemplated by the
parties. Mann v. NCNB Tex. Nat'l Bank, 854 S.W.2d 664, 668 (Tex.
App.--Dallas 1992, no writ); First Nat'l Bank v. Trinity Patrick Lodge No.
7, 238 S.W.2d 576, 579 (Tex. Civ. App.--Fort Worth 1951, writ ref'd n.r.e.).
In this case, Tafralian's loan to Walker
for the East Street project, which would have occurred at the closing on that
property, and the partnership in the Stemmons project could have been performed
within one year. See Boutell v. Hill, 498 S.W.2d 713, 714 (Tex. Civ.
App.--El Paso 1973, no writ); Heathington v. Heathington Lumber Co.,
398 S.W.2d 822, 826 (Tex. Civ. App.--Amarillo 1966, no writ); Howell v.
Bowden, 368 S.W.2d 842, 846 (Tex. Civ. App.--Dallas 1963, writ ref'd n.r.e.)
(all providing that oral contract to perform partnership for indefinite period
was performable within one year). The parties also contemplated that other
portions of their agreement could be performed in one year. For example, they
attempted to negotiate a contract for calculating the division of profits from
the East Street property (the Profits Contract). Although the Profits Contract
would have given Walker two years to sell the East Street property, he could
have sold the property within one year. In that event, the division of profits
would have been performable within one year. Likewise, the term of the note to
finance the improvements on the East Street property was two years, "or
upon sale of any or all" of the East Street property, whichever occurred
first. Thus, Walker could have performed the note for improvements by repaying
it within one year if he had sold the East Street property within a year.
Part of the parties' agreement was not to
be performed within one year, however. Tafralian testified that the term of the
loan for the purchase of the East Street property was to be for two years, and
the purchase money real estate lien note that the parties attempted to negotiate
was for a two-year term.
An agreement that fixes a definite period
longer than a year during which performance shall continue indicates that the
parties did not contemplate earlier performance. Mann, 854 S.W.2d at
668; Vess Beverages, Inc. v. Paddington Corp., 886 F.2d 208, 213 (8th
Cir. 1989). The possibility of prepayment within one year alone is not enough to
satisfy the statute. Mann, 854 S.W.2d at 668; First Nat'l Bank,
238 S.W.2d at 579. Because the loan from Tafralian to Walker for purchase of the
East Street property was to be performed over a two-year period, this portion of
the parties' agreement is within the statute of frauds.
Tafralian contends, however, that even if
the parties' agreement regarding the East Street project is within the statute
of frauds, the portion of the agreement concerning partnership in the Stemmons
project is not, because each investment "stood on its own" as to terms
and consideration. We disagree.
If contractual provisions within the
statute of frauds are not severable from those outside the statute, the entire
contract is unenforceable unless it satisfies the statute of frauds. Upson
v. Fitzgerald, 129 Tex. 211, 103 S.W.2d 147, 150 (1937). Contractual
provisions that are dependent upon one another are not severable for purposes of
the statute of frauds. Id. Here, the portion of the contract providing
for the East Street property loan is a key element of the contract that is not
severable from the remainder of the parties' agreement. Walker needed financing
to go forward with the East Street project, without which there would have been
no profits or repayment of interest. Walker offered Tafralian an equal
partnership in the Stemmons project as an incentive to obtain financing for the
East Street project. In addition, Tafralian testified at trial that the East
Street and Stemmons projects were a package deal.
We hold that the provisions of the
agreement relating to the East Street project are not severable from the
provisions relating to the Stemmons project. Because the East Street provisions
are within the statute of frauds, the agreement was not enforceable against
Walker unless all of its essential terms were in writing and signed by him. See
id.
Tafralian asserts that all material terms
of the parties' agreement were in writing and signed by Walker. He contends that
the written agreement consisted of Walker's initial hand-written proposal to
Tafralian, plus "less important agreements" later faxed by Walker or
his attorneys to Tafralian. Walker asserts that he never signed any writing,
with or without the essential terms of the parties' agreement.
We need not decide whether there was a
writing signed by Walker because one provision that Tafralian contends "was
always a material part" of his and Walker's agreement is not in any of the
documents on which Tafralian relies. Tafralian asserts that the provision
requiring simultaneous closings on both the East Street and Stemmons properties
was a material part of the parties' agreement because he did not want to close
on the East Street property, which he considered to be the riskier of the two
investments, unless he knew the Stemmons closing would also take place. The only
possible written mention of a simultaneous closing was Tafralian's proposal in a
May 3, 1999 letter that the parties "[t]ie the two deals together."
Tafralian did not write this letter until after he refused to make the East
Street loan because Walker had extended the closing date on the Stemmons
property, and there is no evidence that Walker accepted Tafralian's proposal.
Thus, even if we assume for the sake of argument that the parties had a written
agreement, the simultaneous closing provision was not in it.
Tafralian testified at trial that the
parties "had always agreed . . . we're going to close on the same
day." At best, however, this testimony is merely evidence of an oral
modification of the parties' agreement. An oral modification of a written
contract within the statute of frauds is enforceable only if the modification
does not materially alter the obligations imposed by the underlying agreement. See
Dracopoulas v. Rachal, 411 S.W.2d 719, 722 (Tex. 1967); Vendig v.
Traylor, 604 S.W.2d 424, 427 (Tex. Civ. App.--Dallas 1980, writ ref'd n.r.e.).
In this case, the simultaneous closing
provision materially altered the parties' obligations. Tafralian testified, and
asserts on appeal, that because the closings did not occur simultaneously, he
was excused from loaning Walker the money for the East Street property and
entitled to recover breach of contract damages against him. When the party
relying on an alleged oral modification to a contract under the statute of
frauds asserts that breach of the modification is sufficiently material to
excuse the nonbreaching party's performance of the contract, the modification is
material and unenforceable unless it is in writing. King v. Texacally Joint
Venture, 690 S.W.2d 618, 620 (Tex. App.--Austin 1985, writ ref'd n.r.e.).
Because the simultaneous closing
requirement was a material term, the nonperformance of which Tafralian contends
excused his performance under the contract and entitled him to damages, the
requirement was not enforceable unless it was in writing. See id. The
simultaneous closing requirement was not in any of the writings that Tafralian
contends were signed by Walker. Accordingly, the simultaneous closing
requirement was not enforceable, and Tafralian could not recover from Walker
based upon Walker's alleged breach of the requirement.
Tafralian contends that, even if he is not
entitled to recover from Walker with regard to the East Street property, there
is no reason not to enforce the provision in the parties' agreement regarding
the Stemmons partnership. Apart from his contention that Walker breached the
parties' agreement by not closing on both properties simultaneously, Tafralian
does not explain why Walker was obligated to go forward with the partnership in
the Stemmons project or why Tafralian is entitled to recover damages from
Walker. In light of our holdings that the simultaneous closings requirement is
unenforceable and that the provisions in the parties' agreement concerning the
East Street and Stemmons projects were dependent upon one another, this argument
fails.
Conclusion
We sustain Walker's second issue and hold
that the trial court erred by denying Walker's motion for JNOV based on the
statute of frauds.(2) See Fort Bend County
Drainage Dist. v. Sbrusch, 818 S.W.2d 392, 394 (Tex. 1991); Boswell v.
Farm & Home Sav. Ass'n, 894 S.W.2d 761, 768 (Tex. App.--Fort Worth
1994, writ denied) (holding that JNOV is proper if directed verdict would have
been proper, such as where evidence conclusively establishes right of movant to
judgment). We reverse the trial court's judgment for Tafralian and render
judgment that Tafralian take nothing on his claims against Walker.
 
                                                                       
JOHN CAYCE
                                                                       
CHIEF JUSTICE
 
PANEL A: CAYCE, C.J.; DAY and WALKER, JJ.
DELIVERED: March 27, 2003

1. Tafralian does not cite any record support for his
allegations that Walker had "known for weeks of his intention to not
close" on the Stemmons property, but had withheld this information from
Tafralian. See Tex. R. App. P. 38.1(f); Hall v. Stephenson,
919 S.W.2d 454, 467 (Tex. App.--Fort Worth 1996, writ denied) (both providing
that factual statements must be supported by record references).
2. In light of our holdings with regard to Walker's second
issue, we need not consider his remaining issues or Tafralian's cross-point in
which he complains that the trial court improperly excluded prejudgment interest
from the judgment. See Tex. R. App. P. 47.1 (providing that appellate
court shall address only issues necessary to final disposition of appeal).