OPINION



No. 04-03-00387-CV



Fred TABRIZI,


Appellant




v.



DAZ-REZ CORPORATION d/b/a


El Maracumbe Restaurant, H. D. Hosseini, and Sima D. Hosseini,

Appellee



From the 150th Judicial District Court, Bexar County, Texas


Trial Court No. 2000-CI-06731


Honorable Janet Littlejohn, Judge Presiding



Opinion by: Karen Angelini, Justice


Sitting: Alma L. López, Chief Justice

 Karen Angelini, Justice

 Sandee Bryan Marion, Justice


Delivered and Filed: August 4, 2004


AFFIRMED AS MODIFIED

 Plaintiff Fred Tabrizi appeals a portion of a judgment granted in favor of Daz-Rez
Corporation d/b/a El Maracumbe Restaurant, H. D. Hosseini, and Sima D. Hosseini ("Hosseini").
Hosseini brings a cross-appeal on a portion of the judgment granted in favor of Tabrizi. Because we
hold that Tabrizi's first issue and Hosseini's cross-issue have merit, we modify the judgment of the
trial court. As modified, we affirm. 

Background


 H. D. Hosseini owns Das-Rez Corporation, and Das-Rez Corporation owns El Maracumbe
Restaurant. In 1987, Tabrizi came to work for El Maracumbe as a manager. He was paid a salary of
$36,000 a year plus a bonus of forty percent of El Maracumbe's net profits. Tabrizi's bonuses ranged
from $44,000 to $76,000 a year.

 At some point, Tabrizi approached Hosseini about expanding the restaurant. Although
Hosseini was initially reluctant, he eventually agreed to expand and took out a loan to pay for the
costs of expansion. After the expansion was completed, the parties became aware that El Maracumbe
was experiencing cash flow problems. So Hosseini and Tabrizi met with William Corley, the
accountant. Corley told Hosseini that the reason the restaurant was running out of money was that
in calculating net profit, El Maracumbe had not been deducting certain expenses, including the cost
of paying off the note for the loan, from revenue. In order to fix this problem, Hosseini and Tabrizi
made an agreement. The parties dispute, however, what the terms of that agreement were. According to Hosseini, the parties agreed to deduct the cost of paying off the note from
revenue prior to calculating net profit. Under the former method of calculating net profit, Hosseini
contends, Tabrizi was receiving inflated bonuses. By agreeing to deduct the cost of paying off the
note from revenue before calculating net profit, Hosseini argues, Tabrizi was merely agreeing to pay
back his share of overdrawn bonuses.

 Tabrizi views the agreement differently. According to Tabrizi, he and Hosseini agreed to
forego their bonuses to cover the cost of the expansion at forty and sixty percent, respectively. In
exchange for paying forty percent of the expansion, Tabrizi contends, the parties agreed that he
would receive forty percent of future profits. In Tabrizi's view, this agreement made him a part owner
of El Maracumbe. He testified as follows:

 We were shortage [sic] about the money, expanding. They said I have to pay. Okay.
I told Mr. Corley, I [asked] him, Mr. Corley, I will be glad to pay that. That's going
to be my investment, but I would like [it] to be on [paper in] black and white.

 Corley also testified at trial. He agreed with Hosseini that El Maracumbe was experiencing
cash flow problems and that, in order to fix those problems, the parties agreed to convert the bonus
calculation from a percentage of net income to a percentage of cash flow. He also agreed with Tabrizi
that the parties agreed that Tabrizi would pay forty percent of the expansion of El Maracumbe in
exchange for forty percent of El Maracumbe's future profits. He did not agree with Tabrizi's
assertion, however, that this arrangement made Tabrizi a part owner in El Maracumbe. Corley also
testified that the total costs of expansion exceeded $100,000 and that Tabrizi contributed at least
$40,000.

 Tabrizi left El Maracumbe on May 21, 1999. He subsequently brought suit against Hosseini
for breach of contract, fraud, and negligent misrepresentation. He also alleged that the parties had
formed an implied partnership.

 Statute of Frauds


 At trial, the jury found that Hosseini and Tabrizi had an implied agreement and that Hosseini
failed to comply with the agreement. Arguing that enforcement of such agreement is barred by the
statute of frauds, Hosseini filed a motion for judgment notwithstanding the verdict. The trial court
granted the motion. In his first issue on appeal, Tabrizi argues that the trial court erred in granting
Hosseini's motion for judgment notwithstanding the verdict.

 A trial judge may grant a motion for judgment notwithstanding the verdict only when there
is no evidence to support one or more of the jury's findings of fact necessary to the judgment.
Mancorp, Inc. v. Culpepper, 802 S.W.2d 226, 227 (Tex. 1990). In reviewing a trial court's decision
to grant a motion for judgment notwithstanding the verdict, we must determine whether there is any
evidence upon which the jury could have made a necessary finding of fact. In doing so, we review the
record in the light most favorable to the finding of fact, considering only the evidence and inferences
from that evidence that support the finding and rejecting the evidence and inferences that do not.
Sherman v. First Nat'l Bank, 760 S.W.2d 240, 242 (Tex. 1988) (per curiam) (citing Alm v.
Aluminum Co. of Am., 717 S.W.2d 588, 593 (Tex. 1986)). We will sustain the granting of a motion
for judgment notwithstanding the verdict if the record shows (1) the complete absence of evidence
of a necessary fact, (2) the evidence offered to prove the necessary fact is no more than a mere
scintilla of evidence, (3) the evidence conclusively establishes the opposite of the necessary fact, or
(4) the rules of law or evidence bar consideration of the only evidence offered to prove the necessary
fact. See Anderson v. City of Seven Points, 806 S.W.2d 791, 795 n. 3 (Tex. 1991). 

 Here, Tabrizi argues that the statute of frauds does not bar enforcement of the implied
agreement because such agreement could have been performed in one year. Whether an agreement
falls within the statute of frauds is a question of law. Gerstacker v. Blum Consulting Eng'rs., Inc.,
884 S.W.2d 845, 849 (Tex. App.--Dallas 1994, writ denied). 

 Texas law provides that an agreement that is not to be performed within one year from the
date of making the agreement is not enforceable unless it is (1) in writing; and (2) signed by the
person charged with the promise or agreement. Tex. Bus. & Comm. Code Ann. §§ 26.01(a),
26.01(b)(6) (Vernon 2002).

 Section 26.01(b)(6) does not apply if the contract, from its terms, could possibly be performed
within a year. Niday v. Niday, 643 S.W.2d 919, 920 (Tex. 1982) (per curiam) (if the agreement,
either by its terms or by the nature of the required acts, cannot be performed within one year, it falls
within the statute of frauds and must be in writing). To determine the applicability of the statute of
frauds with indefinite contracts, a court may use any reasonably clear method of ascertaining the
intended length of performance. Gerstacker, 884 S.W.2d at 850. The method is used to determine
the parties' intentions at the time of contracting. Id. Where an oral contract omits the performance
term, duration may properly be implied from extrinsic evidence. Niday, 643 S.W.2d at 920.

 Here, Hosseini argues that because the term of the note was two years, the agreement could
not be performed within a year. We disagree. The agreement to pay off a two-year note was not
between Hosseini and Tabrizi but between Hosseini and his lender. Both Tabrizi and Corley testified
that the parties agreed that Tabrizi would pay forty percent of the expansion of El Maracumbe in
exchange for forty percent of El Maracumbe's future profits. It is certainly possible that Tabrizi could
have paid forty percent of the expansion within a year by investing his bonuses--in fact, the record
reflects that his yearly bonuses typically exceeded that amount.

 Citing Mann v. NCNB Tex. Nat'l Bank, 854 S.W.2d 664, 668 (Tex. App.--Dallas 1992, no
writ), Hosseini argues that the fact that Tabrizi could have paid forty percent of the note within a year
does not remove the agreement from the ambit of the statute of frauds. See id. at 669 (loan agreement
with three-year repayment term was within statute notwithstanding remote possibility that debtor
would repay loan within year from its making). Unlike Mann, however, there is no evidence here that
Hosseini and Tabrizi contemplated that performance of the agreement would exceed one year. Rather,
the evidence reveals that the time period for performance was dependent on El Maracumbe's
profits--in other words, that it was uncertain. Where the time of performance of a contract is
uncertain and performance can conceivably occur within one year, the statute of frauds does not
apply. Walker v. Tafralian, 107 S.W.3d 665, 668 (Tex. App.--Fort Worth 2003, pet. denied).
Accordingly, we hold that enforcement of the alleged agreement is not barred by the statute of frauds
and that Tabrizi should recover $36,913.00 on his breach-of-contract claim. We sustain Tabrizi's first
issue.

Lost Profits


 At trial, the jury awarded Tabrizi $183,000.00 in lost profits for Hosseini's failure to comply
with the alleged agreement. Arguing that Tabrizi failed to establish these damages with reasonable
certainty, Hosseini filed a motion for judgment notwithstanding the verdict. The trial court granted
the motion. On appeal, Tabrizi argues that the trial court erred in granting Hosseini's motion for
judgment notwithstanding the verdict because the evidence establishes the amount of lost profits with
reasonable certainty.

 Again, in reviewing a trial court's decision to grant a motion for judgment notwithstanding
the verdict, we must determine whether there is any evidence upon which the jury could have made
a necessary finding of fact. In doing so, we review the record in the light most favorable to the finding
of fact, considering only the evidence and inferences from that evidence that support the finding and
rejecting the evidence and inferences that do not. Sherman v. First Nat'l Bank, 760 S.W.2d 240, 242
(Tex. 1988) (per curiam) (citing Alm v. Aluminum Co. of Am., 717 S.W.2d 588, 593 (Tex. 1986)).
We will sustain the granting of a motion for judgment notwithstanding the verdict if the record shows
(1) the complete absence of evidence of a necessary fact, (2) the evidence offered to prove the
necessary fact is no more than a mere scintilla of evidence, (3) the evidence conclusively establishes
the opposite of the necessary fact, or (4) the rules of law or evidence bar consideration of the only
evidence offered to prove the necessary fact. See Anderson v. City of Seven Points, 806 S.W.2d 791,
795 n. 3 (Tex. 1991). 

 Recovery for lost profits does not require that the loss be susceptible to exact calculation. Tex.
Instruments, Inc. v. Teletron Energy Mgmt., Inc., 877 S.W.2d 276, 279 (Tex. 1994). However, the
injured party must do more than show that it suffered some lost profits. Id. The loss amount must be
shown by competent evidence with reasonable certainty. Szczepanik v. First S. Trust Co., 883 S.W.2d
648, 649 (Tex. 1994); Holt Atherton Indus., Inc. v. Heine, 835 S.W.2d 80, 84 (Tex. 1992). This is
a fact-intensive determination. Heine, 835 S.W.2d at 84. At a minimum, opinions of lost-profit
estimates must be based on objective facts, figures, or data from which the lost-profits amount may
be ascertained. Szczepanik, 883 S.W.2d at 649; Heine, 835 S.W.2d at 84. Although supporting
documentation may affect the weight of the evidence, it is not necessary to produce in court the
documents supporting the opinions or estimates. Heine, 835 S.W.2d at 84.

 Tabrizi testified to lost profits as follows:

 I would like to request, ask my forty percent investment in El Maracumbe. I would
like to ask forty percent net profit since I left El Maracumbe. I would roughly say
1999 would be $35, $34,0000, 1999, because I have received some of it before I
resign. Year 2000, $60,000; 2001, $60,000. . . . That was my average bonus I used
to make yearly at El Maracumbe.


 This evidence fails to provide a factfinder with sufficient data to determine lost profits with
reasonable certainty. It is not based on objective facts, figures, or data from which the lost-profits
amount may be ascertained. Szczepanik, 883 S.W.2d at 649; Heine, 835 S.W.2d at 84. Accordingly,
we hold that the evidence of lost profits is legally insufficient to support an award of damages. We
overrule this issue on appeal.

Fraud


 At trial, the jury found that Hosseini committed fraud against Tabrizi and awarded Tabrizi
$1,000.00 in damages. Arguing that there is no evidence Hosseini committed such fraud, Hosseini
filed a motion for judgment notwithstanding the verdict. The trial court granted the motion. On
appeal, Tabrizi argues that the trial court erred in granting the motion.

 Citing Southwestern Bell Telephone Co. v. DeLanney, 809 S.W.2d 493, 494 (Tex. 1991),
Hosseini argues that the trial court properly granted his motion because Tabrizi's claim sounds only
in contract. See id. at 495 (quoting Jim Walter Homes, Inc. v. Reed, 711 S.W.2d 617, 618 (Tex.
1986)) ("The acts of a party may breach duties in tort or contract alone or simultaneously in both.
The nature of the injury most often determines which duty or duties are breached. When the injury
is only the economic loss to the subject of a contract itself the action sounds in contract alone.").
Tabrizi, on the other hand, states that his claim sounds either in tort or contract: "The claims by Fred
Tabrizi for negligent misrepresentation and fraud were pled in the alternative to the breach-of-contract/implied partnership claims." Therefore, because Tabrizi concedes that his claim for fraud was
pled as an alternative to his breach-of-contract claim, and because we have determined that Tabrizi
should recover damages on his breach-of-contract claim, we overrule this issue on appeal.

Negligent Misrepresentation


 At trial, the jury found that Hosseini made a negligent misrepresentation on which Tabrizi
justifiably relied and awarded Tabrizi $1,000.00 in damages. Arguing that there is no evidence
Hosseini made such negligent misrepresentation, Hosseini filed a motion for judgment
notwithstanding the verdict. The trial court denied the motion. In his one issue on cross-appeal,
Hosseini argues that the trial court erred in failing to grant his motion for judgment notwithstanding
the verdict.

 Although Tabrizi did not file a reply brief, he states in his original brief that "[t]he claims by
Fred Tabrizi for negligent misrepresentation and fraud were pled in the alternative to the breach-of-contract/implied partnership claims." Therefore, because Tabrizi concedes that his claim for negligent
misrepresentation was pled as an alternative to his breach-of-contract claim, and because we have
determined that Tabrizi should recover damages on his breach-of-contract claim, we hold that the trial
court erred in failing to grant Hosseini's judgment notwithstanding the verdict with respect to
Tabrizi's negligent misrepresentation claim. We sustain this issue on appeal.

Implied Partnership


 At trial, the jury found that Hosseini and Tabrizi had an implied partnership. Arguing that
there is no evidence of an implied partnership, Hosseini filed a motion for judgment notwithstanding
the verdict. The trial court denied the motion. In its judgment, however, the trial court states:

 After the jury returned its verdict, Defendants Das-Rez Corporation d/b/a El
Maracumbe Restaurant and H. D. Hosseini moved for judgment notwithstanding the
verdict as to each of the jury's findings. Having concluded that the evidence is legally
insufficient to support them, the court has previously ordered that certain jury findings
should be disregarded, specifically . . . the jury's findings that the parties had entered
into an implied partnership agreement (Question 11).

 On appeal, Tabrizi argues that if the trial court in fact granted the motion for judgment
notwithstanding the verdict with respect to the implied partnership, such granting was error because
there is legally sufficient evidence of an implied partnership. Because, however, Tabrizi pled implied
partnership as an alternative to his breach-of-contract claim in his petition, and because we have
determined that Tabrizi should recover on his breach-of-contract claim, we overrule this issue. (1)

Conclusion


 We modify the judgment as follows: with respect to Tabrizi's breach-of-contract claim, we
order that Tabrizi recover $36,913.00 in damages. With respect to Tabrizi's negligent
misrepresentation claim, we order that Tabrizi take nothing. As modified, the judgment of the trial
court is affirmed. 

 Karen Angelini, Justice





1. Additionally, we see no damages question or finding to correspond to the implied partnership finding.